**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| AMANDA VAN HORN | : | CIVIL ACTION |
| | : | |
| v. | : | No. _____ |
| | : | |
| BOROUGH OF BROOKHAVEN, | : | |
| JONATHAN ZEBLEY, | : | |
| RICHARD SUBERS, *and* | : | |
| DENISE LESLIE | : | |

## COMPLAINT

Plaintiff **AMANDA VAN HORN** has initiated this action to seek redress against Defendants for unlawful gender-based discrimination, hostile work environment and retaliation in violation of a Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq*., and the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. §§ 951-963.

## I.      PARTIES

1.      Plaintiff is Amanda Van Horn (hereinafter "Plaintiff"), a 32 year-old, adult female residing in Delaware County, Pennsylvania, and was formerly employed as a part-time police officer by the Borough of Brookhaven Police Department.

2.      Defendant Borough of Brookhaven ("Brookhaven") is a government agency having an official address of 2 Cambridge Road, Brookhaven, PA 19015, which is also where the Borough's police headquarters is located.

3.      Defendants, Richard Subers ("Subers") and Jon Zebley ("Zebley") are adult individuals who at all times relevant to this Complaint were employed as police officers by Brookhaven.

4.      Defendant, Jon Zebley, during all times relevant to this cause of action was both a ranking officer and later the acting-Chief of the Borough of Brookhaven Police Department.

5.      Defendant, Richard Subers during all times relevant to this cause of action was a patrolman and, although was employed as full-time officer, shared the same rank as Plaintiff.

6.      Defendant, Denise Leslie during various times relevant to this cause of action was the appointed Mayor of the Borough of Brookhaven.

7.      Defendant Borough of Brookhaven is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 because it is engaged in an industry affecting commerce and because it maintains or maintained fifteen (15) or more employees for each working in each of twenty (20) or more weeks in the current or preceding calendar year.

8.      Defendant, Brookhaven, also maintains a sufficient number of employees to satisfy the jurisdictional prerequisites of the Pennsylvania Human Relations Act (requiring four or more employees).

9.      At all times relevant herein, Defendant, Brookhaven, acted through its agents, servants, and employees, each of whom acted within the scope of his/her employment.  All of the Defendants' actions described in this Complaint were taken under color of state law and those actions were done under circumstances to make Brookhaven legally responsible for said acts.

10.     All harms, damages and injuries suffered by the Plaintiff were the direct, legal and proximate results of the wrongful acts of the Defendants as described in this Complaint.

II.     **JURISDICTION AND VENUE**

11.     The United States Court for the Eastern District of Pennsylvania maintains original subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of civil rights.

12.     The Court may also maintain supplemental jurisdiction over state law claims (if any) set forth herein pursuant to 28 U.S.C. 1376(a) and Rule 18(a) of the Federal Rules of Civil

Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction in that they form part of the same case or controversy.

13.     Venue is properly laid within this District pursuant to 28 U.S.C. 1391(b)(1) and (b)(2) insofar as the Defendants reside in and/or conduct business in his judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district (Plaintiff was terminated from employment at a situs within in the Eastern District of Pennsylvania at the time of the illegal action.

## III.     PROCEDURAL AND ADMINSTRATIVE EXHAUSTION

14.     Plaintiff has exhausted the procedural and administrative requirements for proceeding under Title VII of the Civil Rights Act of 1964 as follows:

(a).     On or about July 1, 2021, plaintiff filed a timely written charge of discrimination (No. 530202104149) against "Brookhaven Borough Police Dept. et. al" with the Philadelphia District of the Equal Employment Opportunity alleging gender discrimination, hostile work environment and retaliation.

(b).     Plaintiff dually filed with the Philadelphia Office of the Pennsylvania Human Relations Commission.

(c).     Plaintiff's charge of discrimination filed with the EEOC and the PHRA was filed within 180 days of the last discriminatory act complained of (i.e. January 22, 2021). 42 U.S.C. § 200e-5(e)(1).

(d).     The U.S. Department of Justice, Civil Rights Division issued a Notice of Right to Sue on the foregoing charge(s) on or about March 29, 2023. (Exhibit "A").

(e).     The instant action is timely because it has been initiated within ninety (90) days of receipt of the Notice and before the date of June 27, 2023.

15.     The Plaintiff has exhausted all of her federal and state administrative remedies.

**IV.     FACTS GIVING RISE TO LIABILITY**

16.     During year 2017, Plaintiff was dating an individual named Josh Van Horn ("Josh") who is now Plaintiff's lawfully married husband with whom she has young children and raises a family.   The couple were married on December 19, 2018.

17.     Josh is also a police officer, but he was then (and remains now) employed with the Upland Borough Police Department – a neighboring jurisdiction of Brookhaven. Upland and Brookhaven are separate and distinct police departments and municipalities.

**The "Smear Campaign" Against Officer Van Horn (Year 2018)**

18.     Defendants Zebley and Subers are, upon information and belief, close friends. During year 2017, both individuals began making comments to the Plaintiff that females should not be employed as police officers whether in Brookhaven or anywhere else in Delaware County.

19.     In March 2018, Subers began a smear campaign against Plaintiff which included the circulation of a defamatory falsehood; namely that Plaintiff and Josh were caught on camera having sex on shift at the Upland Borough Police Department building.

20.     Subers circulated this falsehood not just with the Brookhaven Borough Police Department but also the Upland Borough Police Department.   Subers further circulated this falsehood to members of Borough Council.

21.     Around this time, Subers began to treat Plaintiff harshly and unjustifiably.   Though not a superior of Plaintiff, Suber began to issue her "direct orders".

22.     Also during this time, Subers began to drive his personal vehicle past the Plaintiff's home while he was not on duty.   Upon information and belief, Subers does not reside in the same town nor even zip code as Plaintiff.

23.     Subers and Zebley, being friends, have a track record of pushing females out of the Brookhaven Police Department by way of intentionally creating a hostile work environment.

Three (3) female officers have resigned within the past ten (10) years to include a Nichole Kilroy, Kim Ley, and Kim Teofilak.  At the time of this Complaint no female officers remained employed in the Borough.

24.     Sometime during year 2018, and prior to Zebley becoming acting chief, Zebley orchestrated events to manufacture a "write-up" (discipline) against Plaintiff.

25.     Plaintiff received a three (3) day suspension for failure to respond to Zebley's "call out" on radio of a suspicious person.  The call out was done in a low voice to prevent Plaintiff from hearing it.  No backup was requested for assist.  The call was cleared shortly after in a loud, clear voice.

26.     Plaintiff later learned the Subers coached Zebley to do a "low call out" purposefully to "jam up" the Plaintiff.  Zebley later followed Subers' instruction and made a "write-up" against Plaintiff to the Chief.

27.     Prior to the year 2018 write-up the Plaintiff was never subject to any prior discipline.

28.     Throughout year 2018, Subers approached other Brookhaven Officers and encouraged them to issue her "write-ups" for minor or learning-curve incidents in order to "get that bitch fired."  Plaintiff learned this information from an Officer Hughes employed with Brookhaven in year 2018.

**The Verbal Complaint (Year 2019)**

29.     On or about January 18, 2019, Plaintiff arrived at work and received a special assignment to assist in the execution of a search warrant – being given direct orders to assist with the warrant and evidence.  She was not assigned to patrol because of this specific detail.

30.     After the warrant was executed, she returned to the Police Department to begin logging evidence.

31.     There is a Wawa convenience store within walking distance of the Police Department, and with the approval of Detective Habich, Plaintiff made the two (2) minute walk across the adjoining parking lots to get coffee for herself and the Detective.

32.     When leaving the Wawa store, Plaintiff came across a motor vehicle accident which occurred in the adjoining parking lot where the fast-food chain, Burger King, is situated.  She advised DelCom (dispatch) and made patrol officers aware of the accident.  She made sure that all vehicle occupants were not injured and gathered the rudimentary information necessary for patrol officers to receive upon arrival.

33.     Defendant Subers, being assigned to patrol on or about January 18, 2019, arrived and Plaintiff handed him the information gathered.  Subers informed Plaintiff that because she is a "part-timer" that she was to do the police incident report.  Plaintiff advised Subers that she was assigned a special detail and was in the middle of completing an evidence log which was timely.

34.     Plaintiff left the accident scene since it was secured by patrol (Subers) and returned to logging evidence per the detail to which she was assigned with Detective Habich.

35.     On Plaintiff's next shift (January 19 and/or January 21, 2019) she was pulled aside by then Acting Chief, Martin.   She was advised the Defendant, Subers, had approached the chief with a verbal complaint about "passing off an accident to a senior, full-time officer"

36.     Plaintiff calmly explained to the Chief was occurred on January 18, 2019, and informed that she was under orders to complete the assignment of logging evidence. The Chief answered: "[n]ext time just take the report to avoid the bullshit from Subers."

37.     No disciplinary action was taken against Plaintiff as the complaint was unfounded and Subers was again unsuccessful at impugning the Plaintiff's performance.

38.     On January 22, 2019, Plaintiff filed a formal complaint against Officer Richard Subers.  The Complaint was delivered to and circulated amongst the Mayor and Brough Council; neither of which took any action notwithstanding the "zero tolerance policy of discrimination".

39.     Defendant, Subers, being unhappy that no action was taken against the Plaintiff and, in retaliation for Plaintiff's formal complaint made to Borough Council, set his sights on interfering with Plaintiff's husband's policing career in neighboring Upland Borough.

40.     Upon information and belief, Subers is childhood friends with Josh Van Horn's (husband) Police Chief at Upland Borough.  Subers contacted the Upland Chief directly and began a smear campaign against Josh Van Horn which caused undue stress and anxiety to Plaintiff and the entire Van Horn family as Josh Van Horn believed he could be terminated from his position.

41.     Josh Van Horn (though not a Plaintiff to this action) was to be promoted to Corporal right before Subers made contact with the Upland Police Chief.  Upon information and belief Josh Van Horn's actions in defending his name and reputation ultimately cost him the promotion at that time (*circa* 2019).  Later, it was learned by way of the Upland Chief's own admission that Subers directly contacted Upland Police and manufactured false complaints against Josh Van Horn.

**Retaliatory Action(s) and the Hostile Work Environment (Years 2019-2020)**

42.     While being simultaneously scheduled for shifts with Defendant, Subers, the Plaintiff was involved in more than twenty (20) traffic stops which she initiated.  At no point did Subers ever provide a response or back up.

43.     In one traffic stop occurring in year 2020, the Plaintiff was dispatched to an accident at Trimble Boulevard and Edgmont Avenue.  She arrived immediately, and so did Subers.  Subers did not exit his vehicle but rather just kept driving.  An altercation ensued between Plaintiff and the motorists who became aggressive and combative.  Since Subers had departed, Plaintiff was required to radio DelCom (dispatch) for additional officers.  An officer from the Parkside Borough

responded to the assist, and Subers (who was on patrol) made no response over the radio not did he appear for the called in assist.

44.     During years 2019-2020, Subers made it clear to the Plaintiff that she was at her own peril while policing, that he would not assist an officer of his own department, and that this was being done out of retaliation and in hopes that Plaintiff would be either caused harm or find herself in danger while executing her sworn duties as a law enforcement officer.

45.     While working shifts with Defendant, Zebley, the same thing occurred.  Plaintiff recalls more than ten (10) occasions where there was no response and no backup from Officer Zebley.  Such action (i.e. the intentional failure to respond to a call for back-up) is not common police practice.  Officers are trained that calling for backup is often appropriate and expected in many different circumstances. Sometimes officers need specially trained personnel or specialized equipment. Sometimes an officer just needs another officer or two and sometimes advice or guidance from someone who is more knowledgeable or experienced. In other cases a lone officer may need instant help.  Calling for back-up is way to help improve safety and minimize risk in all kinds of situations.

46.     Plaintiff endured back surgery in June of 2020 and returned to work at full capacity in August 2020.  In the interim, and sometime around July 2020, Defendant Zebley became Acting Chief of the Brookhaven Police Department.

47.     From August 2020 to October 2020, while Defendant, Zebley was acting chief the Plaintiff had no "call outs" (i.e. missed time from work) and picked up four extra shifts in addition to her shifts already assigned.  At said time she was averaging around 60 hours per pay period. She had also completed and was up to date on all mandated training and certifications.

48.     On October 06, 2020, the Plaintiff contacted Defendant Zebley who was then responsible for making the shift schedule for all officers in the department.  Plaintiff texted Zebley

and inquired when the schedule would be complete since the only information available was through October 10, 2020.  Defendant, Zebley responded via text that he was "working on it".

49.     Upon arrival to her shift at 19:45 hours on October 06, 2020, the Plaintiff learned that three (3) male officers were placed on full-time rotation – effectively receiving a promotion.

50.     Plaintiff asked Acting Chief Zebley if there was a mistake since she was not put on any rotation and did not appear on the schedule.  Plaintiff was informed: "I will get in touch with you next week to discuss".

51.     Less than two hours later (around 21:45 hours) the Plaintiff received an email from Defendant, Zebley containing an attachment of a "Pre-Disciplinary Action Letter".  In the email Zebley requested a meeting the morning of October 8, 2020, to discuss the issues raised in the Pre-Disciplinary Action Letter.

52.     Plaintiff attended the meeting with her Union Representative.  Also present at the meeting was Denise Leslie ("Mayor Leslie") who was appointed, but not yet sworn, as the Mayor of Brookhaven.

53.     Plaintiff, by and through her Union Representative, provided documentary evidence to defeat the accusations.  To this day, the Plaintiff has yet to receive any notification in writing of any decision arrived at from the meeting though she was informed that in the Pre-Disciplinary Action Letter that she would receive it.

54.     After the meeting the Plaintiff realized that she was no prevented from working the maximum number of hours available to her because of Zebley's decision to put three (3) other part-time male officers on a full-time rotation.

55.     Despite having seniority over the three (3) officers now made full-time, the Plaintiff was never asked to be placed on a full-time hour rotation. Plaintiff was forced to file for partial

unemployment and the unjustified reduction in work began taking a toll on Plaintiff, creating financial, mental and emotional hardship.

56.     Plaintiff went from working nearly 60 hours a pay period to 12-36 hours a pay period.  When she was hired, she was working an average of 80 hours per pay period.

## The Court Attendance Controversy

57.     On November 6, 2020, the Plaintiff received two (2) separate, written warnings from Defendant, Zebley, regarding an alleged failure to attend court hearings at the Brookhaven Magisterial District Court where Plaintiff was either an affiant or material witness for the Commonwealth.

58.     In one instance and on the date of October 15, 2020, the sitting Magistrate reached out to Chief Zebley inquiring where Plaintiff was since there were cases scheduled for 9:00, 10:00 and 11:00 AM.  Plaintiff was on patrol and was required to report to dispatched calls.  She was prevented from timely appearing at court.  When she did arrive, she was informed by the Magistrate that all three (3) of the Defendants in those morning cases were Defense continuances either for the Defendants failing to appear or otherwise requiring new court dates for a variety of differing reasons.  At no point did the Plaintiff's attention to dispatched calls adversely affect the operation of the Magisterial District Court.

59.     In a second instance on or about November 5, 2020, the Plaintiff was scheduled to appear at 13:00 hours as the affiant for one (1) case, Commonwealth v. Bionca Johnson. MJ-32239-TR-0002801-2019.  The public web docket reflects that the case had been continued on six (6) prior occasions.  Plaintiff recalls Bionca Johnson's failure to appear caused those continuances.

60.     Given the Bionca Johnson's proclivity for not appearing, the Plaintiff called into the Magisterial District Court's Clerk "Debbie" and inquired whether or not the Defendant had

shown up yet.  Debbie replied that the Defendant finally showed up to Court but that her defense counsel was not yet present.  Plaintiff informed Debbie that she would be there in 10-15 minutes.

61.     Around the same time Plaintiff was on the phone with Debbie, Chief Zebley texted Plaintiff and asked if she was at court yet.  Plaintiff advised that she was in communication with Debbie and that there would be mutual delay because Plaintiff was on her way and so was defense counsel.

62.     Plaintiff received a write up for the two court events by Zebley by way of written letter dated November 02, 2020, who found that she was unjustifiably late to Court.  After receiving the write-up, Plaintiff had a conversation with fellow officer, Robert Barth, who related that: "Subers said to me that he told borough counsel three officers needed to be called in and shaped up or shipped out."

63.     It is common for Police Officers to arrive late for scheduled court hearings for a variety of reasons to include, the delay of defense counsel, patrol duties, emergencies, and other forms of delay.  Plaintiff recalls various male officers (Officer Eastman) failing to attend court hearings in their entirety and not receiving a written admonition or disciplinary action.

64.     It is not common, on the other hand, for a Police Chief to check in on certain officers to ensure they have arrived at court punctually.  Plaintiff was being specifically and unjustifiably targeted for disciplinary action.

**Plaintiff is genuinely late, but just once, and is treated disparately.**

65.     On January 04, 2020, the Plaintiff arrived thirty (30) minutes late to her scheduled shift.  Plaintiff contacted Chief Zebley and informed she would work an extra hour (unpaid) that day on her shift and Zebley approved.

66.     As pleaded below, the Plaintiff was ultimately terminated.  This one instance of tardiness was used to justify her termination.

67.     Plaintiff was treated disparately.  Officer Malcolm Duff ("Duff"), a black male employee, was consistently unable to work a full 12-hour shift, had repeated tardy stars sometimes up to thirty minutes late and never received any disciplinary action.

68.     Fellow officers constantly complained that Duff was never on time.

69.     Officer, Richard Clymer ("Clymer"), a white male, also has experienced multiple issues during his employment to include "no call, no show", failure to attend court, excessive use of force investigations, and declining to pick up shifts when called (due to others' call outs).

70.     Clymer was never written up for any of these offenses.  He was given the opportunity to resign instead of being terminated.

71.     Kim Teofilak ("Teofilak") a white female officer, will assert that she was forced to resign by Acting Chief, Zebley.  At those times relevant to this Complaint, Teofilak was the only other female employed by the Department in addition to the Plaintiff.

72.     She was often unable to work and was given the opportunity to resign one month before her probation was to expire.

73.     Upon information and belief there are no female officers remaining in the Borough of Brookhaven Police Department.  Two females (including Plaintiff) left the Department within one calendar month (December 2020 into January 2021).

### The Facebook Post of January 06, 2021

74.     On January 06, 2021, it was widely reported that supporters of candidate, Donald Trump assembled and caused an insurrection at the U.S. Capitol Building in Washington D.C.

75.     During that time period, various factions of the U.S. population were not inclined to accept the results of the U.S. Presidential election.  There were genuine fears that unrest could spill out from Washington to other areas of the country.

76.     On January 06, 2021, the Plaintiff made a Facebook post stating: "I smell a civil war coming.  Everyone tie your boots and get ready."

77.     The context of her post was not immediately clear and remains unclear to this day; (i.e. whether it was meant to fellow officers to prepare for likely unrest or whether the post was urging the post-viewers to pick a side in the Trump/Biden ongoing electoral dispute).

78.     At 17:29 hours on January 06, 2021, Plaintiff received a text message from Zebley demanding that she call "ASAP."  Plaintiff made the call and Zebley informed that "there have bee complaints and unrest regarding your Facebook post from multiple people."  Zebley demanded that Plaintiff remove the post immediately.  Plaintiff advised that she would take down the post immediately.

79.     Zebley further informed Plaintiff that "at this time you are being removed from the street for your safety", that threats had been made against Plaintiff and her family, and that Plaintiff would be paid for her scheduled, upcoming shifts. Zebley refused to inform Plaintiff of the nature of the threats nor any intelligence as to who the threat-makers were.

80.     Plaintiff and Zebley communicated again on January 08, 2021, when Plaintiff inquired whether or not her court cases would have to be continued.  Zebley informed "[l]et's continue them just in case.  I'm hoping everyone calms down and this blows over."

81.     On January 13, 2021, the Plaintiff emailed Mayor Leslie inquiring into the nature of the threats made and further requesting written documentation as to why she was placed on administrative assignment. No response was received from the Mayor.

82.     On January 22, 2021, the Mayor mailed the Plaintiff a birthday card *via* USPS first class mail yet still failed to respond to any concerns raised in the January 13, 2021, email.

83.     On January 22, 2021, Plaintiff emailed Zebley and copied (cc'd) the Mayor at 16:06 hours again requesting clarification.

84.     On January 22, 2021, at 17:35 hours Zebley responded stating "please be assured that we are unaware of any threats made against you or your family.  If you are available Monday morning [01/25/2021] at 8:00 A.M., we could meet to discuss further."

85.     Plaintiff suspects that there were never any threats as she was first informed and that the cover-story of threats was subterfuge, providing Zebley and the Borough time to remove Plaintiff from the schedule prior to a premeditated termination.

### Termination Day – January 25, 2021

86.     Plaintiff arrived and entered the council room on time with her Union Representative on January 25, 2021, and was immediately informed by Zebley that this was termination hearing.

87.     Zebley promptly read a Termination Letter verbatim which was signed by Mayor, Denise Leslie and Jonathan Zebley – Acting Chief of Police. (A true and correct copy of the Termination Letter is attached hereto as Exhibit "B").

88.     Plaintiff, by and through her Union Representative, requested formal documentation as to why she was put on administrative leave.  Zebley stated: "[N]o I am not doing that.  I will have to talk with the Solicitor."

### Borough of Brookhaven Unsuccessfully Challenges
### Plaintiff's Claim for Unemployment Compensation

89.     Plaintiff applied for unemployment compensation through the Pennsylvania Department of Labor & Industry on April 4, 2021.

90.     Defendant, Borough of Brookhaven, challenged the application and sought appeal and a hearing was conducted at which time Zebley appeared as the employer witness.

91.     Determination (No. 20912927) was issued on February 05, 2022, by the Scranton UC Service Center by and through referee Shaun Griffith.  (A true and correct copy of the determination is attached hereto as Exhibit "B").

92.     Plaintiff hereby incorporates the findings of the Unemployment Compensation referee in full and as if set forth herein more fully at length.

93.     The Determination made several "Findings of Fact" to include:

(a).    The claimant (i.e. Plaintiff in this action) worked for the Brookhaven Borough as a part-time police officer from October 2017 through January 4, 2021; she was sworn in on September 15, 2017 and was discharged on January 25, 2021;

(b).    The claimant was put on administrative leave on January 6, 2021, after something occurred on social media resulting in the claimant being in fear for her safety;

(c).    The employer drafted [a] letter on January 21, 2021, discharging the claimant, but issued the letter to the claimant on January 25, 2021, when the employer witnesses present at the referee's met in person with the claimant.

(d).    The letter drafted on January 21, 2021, stated that the claimant was discharged for being late to court on two occasion and late for one shift; the employer did not supply a copy of the actual discharge letter delivered to the claimant on January 25, 2021, leaving doubt whether it was identical to the letter drafted on January 21, 2021.

94.     The Referee issued narrowed to the issue to "whether the employer (Borough of Brookhaven) sustained its burden of demonstrating that the claimant was discharged due to willful misconduct in connection with her work."

95.     The Referee reasoned in relevant part that "the purported reason for the claimant's discharge was poor attendance…the referee does not find the accusation credible but as a matter of diligence, analyzes the accusation.  Separately, as a matter of dicta, the referee elaborates on why he does not find the employer's argument tenable."

96.     Ultimately the Referee concluded: "the one instance of tardiness that the employer actually established was January 4, 2021, when the claimant arrived late to work…[t]he Referee does not consider one instance of tardiness to rise to the level of willful misconduct [sic]."

97.     The Referee continued:

> The referee notes as a matter of dicta that he does not [find] either the claimant nor the employer witness credible on the most salient facts of the case.   The referee believes the employer witness completely sidestepped the actual reason for separation which occurred on January 6, 2021; because neither party specifically said what occurred, the referee can only speculate, but it is almost certain that whatever happened on January 6, 2021, was the reason the claimant was discharged.   Whatever it was, the claimant was put on administrative leave on January 6, 2021, and then fired roughly two weeks later.   The employer did not present any evidence regarding that matter – an omission the referee finds highly suspicious. Additionally, the employer submitted a January 21, 2021, termination letter but not a copy of the actual [t]ermination letter that all parties agreed was delivered to the claimant on January 25, 2021; again, a suspicious omission.   The claimant, on her part, steadfastly asserts that she was discharged due to gender bias but failed to cite any specific facts that would suggest that she suffered from gender bias at the workplace.   The referee finds neither party credibly which bodes poorly on both sides of the dispute, but incredibly affects the employer more since the employer bears the burden of proof in the present case.

98.     Failing to carry its burden of proof and failing to demonstrate that the discharge from employment resulted from willful misconduct, the referee found the claimant (Plaintiff) to be eligible for regular Unemployment Compensation benefits.

**COUNT I**
**TITLE VII – GENDER DISCRIMINATION**
**CIVIL RIGHTS ACT OF 1964**
42 U.S.C. § 2000e, *et. seq.*

*Plaintiff v. Borough of Brookhaven*

99.     Plaintiff hereby incorporates paragraphs one (1) through ninety-eight (98) as if set forth herein more fully at length.

100.     Plaintiff is a member of a protected class and was qualified for the position of Police Officer, having completed all of her training and required certifications.

101.    As described above the Plaintiff was subject to adverse employment actions, to include termination, reduction in work hours, and her being denied full-time status when others not in her protected class were afforded such opportunity.

102.    The adverse employment actions affected Plaintiff's compensation, terms, conditions, and privileges of employment. 42 U.S.C. § 2000e-2(a)(1).  A reduction in hours constitutes an adverse employment action. Lidwell v. Univ. Park Nursing Care Center, 116 F. Supp. 2d 571 (M.D. Pa. 2000)

103.    The circumstances surrounding her adverse employment actions were motivated by discrimination and the employer favored individuals with qualifications similar to Plaintiff's.

### COUNT II
### TITLE VII – HOSTILE WORK ENVIRONMENT
### CIVIL RIGHTS ACT OF 1964
42 U.S.C. § 2000e, *et. seq.*

*Plaintiff v. Borough of Brookhaven*

104.    Plaintiff hereby incorporates paragraphs one (1) through one hundred (103) as if set forth herein more fully at length.

105.    Hostile work environments are made up of separate acts which can collectively comprise a discriminatory employment practice.  National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115-117 (2002).  Because a hostile work environment "cannot be said to occur on any particular day," plaintiffs may recover for acts that predate the statutory period if the acts are part of a "continuing violation." Id. at 115–117.

106.    Plaintiff's factual allegations which predate the 300 day look-back period from the date of her last act of discrimination (i.e. her termination) are material and probative.

107.    In this continuing violation case, Plaintiff has shown all acts which constitute the claim are part of the same unlawful employment practice (retaliation) and that at least one act falls

within the applicable limitations period." <u>Mandel v. M&Q Packaging Corp</u>, 706 F.3d. 157, 166–

167 (3d Cir. 2013).  Here, the Plaintiff has pleaded thirty (30) discrete events persisting into year

2020 and post-March 2020 where her fellow officers (Zebley and Subers) failed to provide backup

while Plaintiff was conducting traffic stops.

108.    The violations alleged were a pattern of ongoing conduct involving the same

individuals, Subers and Zebley.

109.    Plaintiff has suffered intentional discrimination because of her sex and the

discrimination was both severe and pervasive.  The conduct complained of was sufficient to alter

that conditions of Plaintiff's employment and create an abusive working environment.

110.    The discrimination detrimentally affected Plaintiff and the discrimination as alleged

would detrimentally affect a reasonable person in like circumstances.

111.    Defendant is responsible for the hostile work environment insofar as the Defendant

knew of the harassment and failed to take prompt remedial action.   Plaintiff filed a formal

complaint on January 22, 2019, to Acting Chief Martin and Borough Council.

<div align="center">

**<u>COUNT III</u>**
**TITLE VII – RETALIATION**
**CIVIL RIGHTS ACT OF 1964**
42 U.S.C. § 2000e, *et. seq*

*Plaintiff v. Borough of Brookhaven*

</div>

112.    Plaintiff hereby incorporates paragraphs one (1) through one hundred-eleven (111)

as if set forth herein more fully at length.

113.    The Third Circuit has recognized retaliatory hostile work environment claims

where an employee is subjected to a hostile work environment in retaliation for having engaged in

protected activity. *See* <u>Jensen v. Potter</u>, 435 F.3d, 444, 448–450 (addressing an alleged hostile

environment that emerged as the plaintiff filed a sexual harassment complaint); *see also* <u>Komis v.</u>

Secretary of the United States Department of Labor, 918 F.3d 289, 293 (3d Cir. 2019) (affirming plaintiffs' ability to bring retaliatory hostile environment claims.

114.    Title VII's antiretaliation provision bars employers from discriminating against employees that oppose unlawful conduct or participate in Title VII investigations or proceedings. 42 U.S.C. § 2000e-3. Here, as described above, the Plaintiff has engaged in activities which are protected by Title VII and the PHRA.

115.    Plaintiff's engagement in protected activities is the cause of the adverse employment action(s).  Again, Plaintiff tendered a formal complaint on January 22, 2019, to Acting Chief Martin and Borough Council.

116.    As a result of those activities described in the factual recitation of this Complaint, Defendants took adverse actions against her.  As described above the Plaintiff was subject to adverse employment actions, to include termination, reduction in work hours, and her being denied full-time status when others not in her protected class were afforded such opportunity.  She was also subjected to pretextual discipline.

117.    The employer's facially legitimate reason(s) as stated for the employment decisions as pleaded herein were false and thus was not the real reason for the decision.  Rather, an illegitimate set of considerations led to adverse employment action.

118.    Defendants' failure to investigate Subers' harassment, the discipline of Plaintiff, and persistent antagonism (to include challenging her Unemployment Compensation benefits application in bad faith) were all part of the same retaliatory practice.

119.    Here, the employer has engaged in discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

## COUNT IV
## VIOLATION OF THE PENNSYLVANIA
## HUMAN RELATIONS ACT
43 Pa. Cons. Stat. §§ 951-963.

*Plaintiff v. Richard Subers, Jonathan Zebley and Denies Leslie*

120.    Plaintiff hereby incorporates paragraphs one (1) through one hundred-nineteen (119) as if set forth herein more fully at length.

121.    The PHRA prohibits "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice…" 43 Pa.Cons. Stat. § 955(e).

122.    Insofar as the Borough of Brookhaven is liable for the discriminatory practices as described above, the individual defendants are liable for aiding and abetting a discriminatory practice.

## PRAYER FOR RELIEF

The Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant and that it further enters an Order providing that:

(a).    Defendants are to be permanently enjoined from discriminating against Plaintiff on the basis of her gender, as forbidden by the Title VII of the Civil Rights Act of 1964, as amended, and other applicable federal and state law; and that defendants will not further injuriously interfere with plaintiff's jobhunting efforts and future career placements.

(b).    Defendant Borough of Brookhaven is to promulgate and adhere to a policy prohibiting gender discrimination within the Borough Police Department;

(c).    Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority;

(d).    Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by the actions of defendants;

(e).    Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious, and outrageous conduct and to deter them and/or persons or entities from engaging in such misconduct in the future;

(f).    Plaintiff is to be immediately reinstated as a Police Officer with the Borough of Brookhaven for one calendar day at which time she shall be permitted to tender a resignation from the department; and concomitantly therewith the Borough of Brookhaven and its Police Department shall remove, obliterate and delete from all official records any and all references to the Plaintiff's involuntary termination of employment;

(h).    Plaintiff is to be accorded all such other legal and/or equitable relief as the Court deems just proper, and appropriate;

(i).    Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal fee shifting statutes.

(k).    Plaintiff is to be granted such additional injunctive or other relief as she may request during the pendency of this action in an effort to ensure Defendants do not engage – or cease engaging – in illegal retaliation against Plaintiff or other witnesses to this action.

<div style="margin-left:40%">

Respectfully submitted,

**THE LAW OFFICES OF
DANIEL A. PALLEN, P.L.L.C.**

_/s/_
Daniel A. Pallen, Esquire
PA Attorney ID: 207001
114 West Front Street
Media, PA 19063
(484) 550-7542
(484) 550-7532 _fax_

</div>

## **VERIFICATION**

I, Amanda Van Horn, do hereby verify that the statements made in foregoing Complaint are true and correct to the best of my knowledge, information, or belief. The undersigned understands that false statements herein are made subject to the penalties of 28 U.S.C. § 1746, relating to unsworn falsification to authorities.

/s/ Amanda Van Horn

By:  Amanda Van Horn

# EXHIBIT A



**PHONE**
(610) 874-2557

# BROOKHAVEN BOROUGH

2 Cambridge Road, Suite 100 ~ Brookhaven, PA 19015-1708

**FAX**
(610) 874-2612

January 25, 2021

Officer Amanda VanHorn
401 Ivy Lane
Upland, PA 19015

RE:   **Notice of Disciplinary Action and Termination**

Dear Ms. VanHorn:

On October 8, 2020, we held a pre-disciplinary meeting with you to discuss certain issues of neglect and inefficiency relative to your work performance including, but not limited to, the following:

> 1. Habitual failure to work assigned scheduled shifts.
>
> 2. Habitual failure to make yourself available and/or to respond when requested to work additional shifts during times of civil unrest or police personnel shortage.
>
> 3. Habitual failure to attend continuing education and training seminars to improve your professional skills, craft, and work product.

At the meeting you stated you don't dispute that attendance was an issue. Despite our discussion, we note the following infractions and/or neglect issues **subsequent** to our meeting:

1. On October 15, 2020 you were scheduled, and had previously received Court Notices, to appear for three (3) separate hearings at the Brookhaven Magisterial District Court before Judge Georgia L. Stone. You failed to appear at the scheduled times for all three (3) hearings. Judge Stone contacted Acting Chief Zebley to inquire as to your whereabouts. When Acting Chief Zebley contacted you to inquire about your failure to report to Court at the designated times, you responded that you "forgot". A written reprimand dated November 2, 2020 was issued to you by Acting Chief Zebley and is part of your personnel file.

2. On November 5, 2020 you were scheduled, and had previously received a Court Notice, to appear for a hearing at the Brookhaven Magisterial District Court before Judge Georgia L. Stone. When you failed to arrive at Court in a timely manner, Judge Stone contacted Acting Chief Zebley to inquire as to your whereabouts. After Acting Chief Zebley contacted you, you eventually arrived at the District Court more than 30 minutes late. A written reprimand dated November 5, 2020 was issued to you by Acting Chief Zebley and is part of your personnel file. When you were hand-delivered the discipline letters, you stated that you accept responsibility and that you have no excuse.

3. On January 4, 2021 you failed to show up for your scheduled work shift (0800-2000) that **you selected and agreed to work.** After being contacted by Acting Chief Zebley, you stated that "I didn't realize today was January 4." You arrived at the police station approximately 40 minutes late. The Borough was compelled to pay an officer an hour of overtime wages for the gap in coverage.

In light of all of the above infractions which further constitute violations of the Department's code of conduct, the Borough of Brookhaven is compelled to terminate your employment as a part-time police officer effective immediately. You are directed to turn over to Acting Chief Zebley your service weapon, police badge, all ID police credentials and any and all equipment and uniforms owned by Brookhaven Borough within 48 hours.

Very truly yours,

Denise Leslie
Mayor

Jonathan Zebley
Acting Chief of Police

# EXHIBIT B



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

March 29, 2023

Ms. Amanda Van Horn
c/o Daniel A. Pallen, Esquire
Law Offices of Daniel A. Pallen
114 W. Front St.
Media, PA 19063

Re: EEOC Charge Against Brookhaven Borough, Police Dept., et al.
       No. 530202104149

Dear Ms. Van Horn:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Philadelphia District Office, Philadelphia, PA.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Philadelphia District Office, EEOC
     Brookhaven Borough, Police Dept., et al.

# EXHIBIT C





**pennsylvania**
DEPARTMENT OF LABOR & INDUSTRY
UNEMPLOYMENT COMPENSATION BOARD OF REVIEW

# APPEALS REFEREE DECISION

Decision Date: 5/13/2022

**Daniel Pallen**
114 West Front Street
Media, PA 19063

**Final Date to Appeal:**
**6/3/2022**

Referee Office Docket:
2022024086-RO

Claimant SSN:
XXX-XX-5533



| CLAIMANT | EMPLOYER |
|---|---|
| AMANDA VANHORN<br>401 IVY LN<br>BROOKHAVEN, PA 19015 | Brookhaven Borough<br>2 Cambridge Rd Ste 100<br>Brookhaven, PA 19015 |

**CLAIM HISTORY:**

Claim number: 3307847
Application date: 4/4/2021
Determination number: 20912927
Determination issued: 2/5/2022  By: SCRANTON UC SERVICE CENTER
UCSC determined claimant under UC Law: Allowed 402(e)
For Waiting Week Ending: N/A
For Compensable Week(s) Ending: N/A

Appeal Filed: 2/23/2022     By: BROOKHAVEN BOROUGH

Hearing Held: 5/11/2022     In: Springfield Referee Office

Attended By: Griffith, Shaun
            VANHORN, AMANDA
            BROOKHAVEN BOROUGH

*Auxiliary aids and services are available upon request to individuals with disabilities.*
*Equal Opportunity Employer/Program*



**FINDINGS OF FACT**

This decision addresses appeal dockets 2022024086, 2022024089 and 2022016791. Although decisions are rendered for all appeal dockets, they are all substantively identical.

1. The claimant worked for the Brookhaven Borough as a part-time police officer from October 2017 through January 4, 2021; she was sworn in on September 15, 2017 and was discharged on January 25, 2021.
2. The claimant was put on administrative leave on January 6, 2021 after something occurred on social media resulting in the claimant being in fear for her safety.
3. The employer drafted the letter on January 21, 2021 discharging the claimant, but issued the letter to the claimant on January 25, 2021 when the employer witnesses present at the referee's met in person with the claimant.
4. The letter drafted on January 21, 2021 stated that the claimant was discharged for being late to court on two occasions and late for one shift; the employer did not supply a copy of the actual discharge letter delivered to the claimant on January 25, 2021 leaving in doubt whether it was identical to the letter drafted on January 21, 2021.

**ISSUE**

Did the employer sustain its burden of demonstrating that the claimant was discharged due to willful misconduct in connection with her work?

**REASONING**

Both the claimant and the employer appeared at the unemployment compensation ("UC") hearing to present testimony and evidence on the issues under appeal. The above findings represent the competent evidence and credibility determinations made by the Referee in rendering the following decision.

Section 402(e) of the Pennsylvania Unemployment Compensation Law states, in relevant part, that an employee shall be ineligible for unemployment compensation benefits for any week during which the unemployment is due to discharge or suspension from work for willful misconduct connected with the work. While the term "willful misconduct" is not defined in the Act, the Pennsylvania Courts in numerous decisions have defined willful misconduct as an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which an employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. Under Section 402(e) of the Law, the burden is on the employer to establish that the claimant's discharge from employment was for reasons which rise to the level of willful misconduct.

The purported reason for the claimant's discharge was poor attendance. For the reasons that the referee bears out at length below, the referee does not find the accusation credible but, as a matter of diligence, analyzes the accusation. Separately, as a matter of dicta, the referee elaborates on why he does not find the employer's argument tenable.

Within the body of Pennsylvania caselaw defining willful misconduct, attendance cases comprise a substantial subset more closely examining the definition of willful misconduct in cases in which an employer discharges a claimant for absenteeism or tardiness. Pennsylvania Courts have consistently held that mere tardiness and absenteeism does not alone constitute willful misconduct in connection with a claimant's work; if there is good cause for the absences or late arrivals, and they are properly reported to the employer, the absence or tardiness is not considered a disregard of the standards of behavior the

 employer has the right to expect of an employee. Even excessive absenteeism, where justified and properly reported does not disqualify a claimant.

Specifically on the issue of attendance, the employer relied on one instance of the claimant failing to appear at court and two instances of tardiness: one for a court appointment and one for a work shift. The claimant missed a court appointment on October 15, 2020, arrived late for a court appointment on November 5, 2020 and arrived about a half hour late to a scheduled shift on January 4, 2021.

Prior to the dates enumerated above, the employer had a hearing about claimant's attendance on October 8, 2020, but based on the claimant's testimony, no discipline resulted because she was able to effectively rebut all allegations of poor attendance brought forth during the October 8, 2020 meeting. The record available to the referee neither explicitly endorses nor explicitly opposes the claimant's assertion that the allegations of poor attendance reviewed on October 8, 2020 were not founded. Had the hearing resulted in further discipline, the referee expects he would have been given documentation to that effect — or at least heard testimony from the employer witness — that the poor attendance allegations were found to be true resulting in discipline. As there was no evidence provided by the employer that the claimant sustained some sort of discipline based on the October 8, 2020 hearing regarding her attendance, the referee concludes that the claimant's assertion that her hearing resolved in no discipline because she effectively rebutted the allegation is correct. In other words, the referee finds the claimant had no attendance issues prior to October 8, 2021.

Regarding October 15, 2020, the employer cited the claimant for failing to attend court, but the claimant established that she was working that day for the police department. She was on patrol when she was apparently supposed to be in court. This is not an instance of absenteeism; the claimant patrolling as a police officer and failing to attend a hearing while on shift may constitute some other problematic conduct, but whatever that failure would be is something other than absenteeism.

On November 5, 2020, the claimant arrived late to a hearing at a Magisterial District Court. Based on both the statements made by the employer witness and the claimant, the claimant was on the phone with the clerk of courts reporting that she was on her way when the employer contacted her about the district court hearing. In other words, the evidence shows that the claimant contacted the court when she realized she was going to the late and was notifying the court that she was on her way. In other words, the referee finds that the claimant was taking remedial steps to ameliorate her tardiness to court prior to receiving contact from the employer on November 5, 2020. If anything, the referee considers this tardiness excused because the claimant was clearly on the phone with the clerk of courts when the employer called her and arrived shortly later thereafter.

Indeed, the one instance of tardiness that the employer actually established was January 4, 2021 when the claimant arrived late to work because she got mixed up on which day was which. The referee does not consider one instance of tardiness to rise the level of willfulness conduct.

The referee notes as a matter of dicta that he does not either the claimant nor the employer witness credible on the most salient facts of the case. The referee he believes the employer witness completely sidestepped the actual reason for separation which occurred on January 6, 2021; because neither party specifically said what occurred, the referee can only speculate, but it is almost certain that whatever happened on January 6, 2021 was the reason the claimant was discharged. Whatever it was, the claimant was put on that administrative leave on January 6, 2021 and then fired roughly two weeks later. The employer did not present any evidence regarding that matter — an omission the referee finds highly suspicious. Additionally, the employer submitted a January 21, 2021 termination letter but not a copy of the actual determination letter that all parties agreed was delivered to the claimant on January 25, 2021: again, a suspicious omission. The claimant, on her part, steadfastly asserts that she was discharged due to gender bias but failed to cite any specific facts that would suggest that she suffered from gender bias at the workplace. The referee finds neither party credible which bodes poorly on both sides of the dispute, but the incredibility affects the employer more since the employer bears the burden of proof in the present case.

In sum, the referee concludes that the employer failed to show willfulness conduct. As the employer



bears the burden of demonstrating that the claimant's discharge resulted from willful misconduct in connection with her work, the referee finds that the claimant is eligible for regular UC benefits.